Kelly Shaw
Wyo. Bar No. 7-5624
Travis W. Koch
Wyo. Bar No. 7-5418
KOCH LAW. P.C.
121 W. Carlson St. Suite 3
Cheyenne, WY 82009
(307) 426-5010
kshaw@kochlawpc.com
tkoch@kochlawpc.com

-and-

George A. Barton (admitted PHV)
Stacy A. Burrows (admitted PHV)
Seth K. Jones (admitted PHV)
BARTON AND BURROWS, LLC
5201 Johnson Drive, Ste. 110
Mission, KS 66205
(913) 563-6250
George@bartonburrows.com
stacy@barton@burrows.com
Seth@bartonburrows.com

FILED

Margaret Botkins
Clerk of Court

5:08 pm, 9/8/23

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING

Gregg B. Colton, on behalf of himself
and a class of similarly situated persons,

                Plaintiff,

v.

Carbon Creek Energy, LLC,

                Defendant.

Civil Action No. 22-cv-150-ABJ

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION EXHIBIT LIST ............................... iv

INTRODUCTION .................................................................................................. 1

BACKGROUND AND STATEMENT OF RELEVANT FACTS ............................................ 3

    A.    The Class Definition............................................................................... 3

    B.    The Operator's Obligations Under the WRPA. .............................................. 3

    C.    Carbon Creek's Repeated Untimely Payments to Colton and the Class......................... 5

ARGUMENT ........................................................................................................ 9

I.      LEGAL STANDARD................................................................................... 9

II.    THE FOUR PREREQUISITES OF FED. R. CIV. P. 23(a) ARE SATISFIED. ............... 10

    A.    Numerosity. ...................................................................................... 10

    B.    Commonality....................................................................................... 10

    C.    Typicality. ......................................................................................... 12

    D.    Adequacy of Representatives. ................................................................. 13

III.   THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS UNDER RULE
23(b)(3) ARE ALSO SATISFIED........................................................................ 14

    A.    Predominance....................................................................................... 15

    B.    Superiority........................................................................................... 19

CONCLUSION..................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................... 20

*Cabot Oil & Gas Corp. v. Followill*, 93 P.3d 238  (Wyo. 2004) ...................................................... 3

*Carnegie v. Household Int'l, Inc.,* 376 F.3d 656  (7th Cir. 2004). ................................................ 20

*Cities Serv. Oil & Gas Corp. v. State*, 838 P.2d 146 (Wyo. 1992). ............................................... 17

*Cline v. Sunoco, Inc. (R&M),* 333 F.R.D. 676 (E.D. Okla. 2019) ................................................ 16

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, 2020 WL 639613 (D. Neb.

    Feb. 11, 2020) ........................................................................................................................ 20

*Dasa Investments, Inc. v. Enervest Operating, L.L.C.*, 2019 WL 8163862 (E.D. Okla. October,

    2019) ...................................................................................................................................... 16

*Decoteau v. Raemisch*, 304 F.R.D. 683, 687 (D. Colo. 2014) ............................................. 10, 12

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968) ........................................................................ 9

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972) ..................................................................... 9

*Kernen v. Casillas Operating L.L.C.*, 2021 WL 5989364 (W.D. Okla. August 17, 2021) .......... 16

*King v. Kansas City S. Indus., Inc.*, 519 F.2d 20 (7th Cir. 1975) .................................................. 9

*Lowery v. City of Albuquerque*, 273 F.R.D. 668, 683 (D.N.M. 2011) ........................................ 10

*McClintock v. Enterprise Crude Oil LLC*, 2020 WL 12814737 (E.D. Okla. December 16, 2021)

    ................................................................................................................................................ 16

*McKnight Realty Co. v. Bravo Arkoma, L.L.C.*, 2022 WL 1768860 (E.D. Okla. April 12, 2022) 16

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ................................... 10, 11, 12

*Morris v. CMS Oil & Gas Co.*, 227 P.3d 325(Wyo. 2010) ........................................................ 17

*Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779 (10th Cir. 2019) ......................... 15

*Nicodemus v. Union Pac. Corp.,* 204 F.R.D. 479 (D. Wyo. 2001) ................................................ 11

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180  (10th Cir. 2002) ................................ 14

*Sherman v. Trinity Teen Sols., Inc.*, 2022 WL 17573837 (D. Wyo. Oct. 5, 2022) ...................... 14

*Skinner v. Uphoff*, 209 F.R.D. 484 (D. Wyo. 2002) .................................................................... 10

*Soseeah v. Sentry Ins.*, 2013 WL 11327129 (D.N.M. Nov. 4, 2013) .......................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). ....................................................... 15, 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 9, 10, 11, 12

*Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) ......................................................... 21

**Statutes**

F.R.E. 201(b)(2), ............................................................................................................................ 7

Fed. R. Civ. P. 23(a) ............................................................................................................ passim

Fed. R. Civ. P. 23(b)(3) ....................................................................................................... passim

N.D.C.C. § 47-16-39.1 ................................................................................................................ 16

OK ST T. 52 § 570.10(D)(2) ....................................................................................................... 16

W.S. § 30-5-301 .......................................................................................................... 1, 4, 12, 13

W.S. § 30-5-303(a) ................................................................................................................ passim

W.S. § 30-5-304 .......................................................................................................................... 12

W.S. § 30-5-302 ..................................................................................................................... 5, 17

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION EXHIBIT LIST**

Exhibit 1 – Expert Report of Royce Porter, Plaintiff's Accounting Expert;

Exhibit 2 – Rule 30(b)(6) depo. of Carbon Creek;

Exhibit 3 – Revenue Statement Dated July 13, 2020 from Carbon Creek to Gregg B. Colton;

Exhibit 4 – Carbon Creeks Objections and Responses to Plaintiff's First Requests for Production of Documents, Interrogatories, and Requests for Admissions;

Exhibit 5 – Carbon Creek's Well List produced at Bates No. CCE_01436;

Exhibit 6 – Carbon Creek's Objections and Responses to Plaintiff's Second Set of Requests for Production of Documents and Requests for Admission;

Exhibit 7 – Plaintiff's Supplemental Objections and Responses to Carbon Creek's First Set of Interrogatories;

Exhibit 8 – Wyoming Oil and Gas Conservation Production Records for T-Chair Fed 4376 3-12 Well;

Exhibit 9 – Letter from Carbon Creek's Counsel RE: Mission Payment Month Data;

Exhibit 10 – Declaration of Gregg B. Colton;

Exhibit 11 –Declaration of Stacy A. Burrows;

Exhibit 12 – Declaration of George A. Barton;

Exhibit 13 – Declaration of Seth K. Jones ;

Exhibit 14 – *Underwood, et al. v. NGL Energy Partners*, Case No. 21-CV-0135-CVE-SH (N.D. Okla.);

Exhibit 15 – *Lee v. Petroquest, L.L.C. et al*., Case No. 16-CV-516-KEW (E.D. Okla.);

Exhibit 16 – *Wake Energy, LLC v. EOG Resources Inc.*, Case No. 20-CV-00183-ABJ (D. Wyo.);

Exhibit 17 – *Dietrich v. Enerfin Resources I L.P., et al*., Case No. 20-CV-084-KEW (E.D. Okla.);

Exhibit 18 – *Miller v. DCP Operating Co. L.P*., Case No. 6:18-CV-00199-JH (E.D. Okla. April 12, 2021);

Exhibit 19 – *Price v. Plains Marketing, L.P.*, Case No. 19- CV-390-KEW (E.D. Okla.);

Exhibit 20 – *Ashcroft Group, LLC v. Silver Creek Oil & Gas, LLC*, Case No. 16- CV-388-KEW (E.D. Okla.);

Exhibit 21 – *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc*., Case No. 6:17-CV-00336-KEW (E.D. Okla. November 26, 2019);

Exhibit 22 – *Reirdon v. Cimarex Energy Co*., Case No. 6:16-CV-0113-KEW (E.D. Okla.);

Exhibit 23 – *McNeill v. Citation Oil & Gas Corp*., 6:17-CV-00121-KEW (E.D. Okla. September 21, 2018); and

Exhibit 24 – *Reirdon v. XTO Energy Inc*., Case No. 6:16-CV-00087-KEW (E.D. Okla.).

## INTRODUCTION

This is a class action case in which the Plaintiff, Gregg B. Colton ("Colton"), on behalf of himself and a defined Class of similarly situated oil and gas interest owners, seek to recover damages from Defendant Carbon Creek Energy, LLC ("Carbon Creek"), based upon Carbon Creek's repeated failure to: (1) timely remit proceeds to the persons entitled to payments derived from the sale of oil, gas, and related hydrocarbons produced from oil and gas wells operated by Carbon Creek in Wyoming as required by the Wyoming Royalty Payment Act, W.S. § 30-5-301 *et seq* ("WRPA"); and (2) automatically include the requisite eighteen percent  (18%) interest as set forth Section 30-5-303(a) of the WRPA on those ultimately payments.

Colton's claims in this class action case are discrete and straight forward. The WRPA requires all operators, such as Carbon Creek, to pay the interest owners or deposit into escrow the monies it owes the payees related to its sale of oil, gas, and related hydrocarbons within specified timeframes. Wyo. Stat. Ann. § 30-5-301. When the operator fails to remit proceeds to the payees entitled to payment within the specific timeframes set forth in Section 30-5-301, Section 30-5-303(a) of the WRPA requires the operator to automatically calculate and pay eighteen percent (18%) interest to those owners legally entitled to such proceeds. As the indisputable evidence confirms, Carbon Creek consistently failed to timely remit proceeds to oil and gas interest owners legally entitled thereto on its Wyoming oil and gas production from February 2016 through the present. There is also no dispute that when Carbon Creek ultimately remitted such untimely payments to those legally entitled to receive payments, it failed to satisfy its statutory obligations under the WRPA by failing to include in those payments the requisite eighteen percent (18%) interest. Royce Porter, Colton's accounting expert, relying on the production and royalty payment detail produced by Carbon Creek in this litigation, has identified more than 2,300 oil and gas

1

interest owners who received proceeds from Carbon Creek outside the statutorily mandated sixty-day timeframe and, like Colton, did not receive the required eighteen percent (18%) interest payment as required by Wyo. Stat. Ann. § 30-5-303(a). No question, the proposed Class here is ideally situated for class certification. Each of the putative Class members is easily identifiable in Carbon Creek's own accounting records.

As the Court will conclude, the WRPA's required uniform application to each of the proposed Class members results in common issues of both law and fact which predominate over any other issues in this class action. Indeed, the evidence in the case shows that for numerous production months, Carbon Creek treated each of the proposed members identically when it failed to remit **payment of proceeds to any interest owner,** even though Carbon Creek continuously produced oil and natural gas from the wells in operated in the State of Wyoming. As the Court will also discern, Colton's accounting expert has applied a reasonable and reliable method to the production data and royalty payment detail produced by Carbon Creak to reasonably ascertain the damages for each of the Class members on a classwide basis.

Colton, therefore, moves for certification of a Fed. R. Civ. P. 23(b)(3) class on his claim against Carbon Creek for Carbon's Creek breach of its clear statutory obligation to pay interest and his associated claim for a declaratory judgment, and requests that the Court enter its order certifying the Class, appointing Colton as the class representative, and appointing Colton's counsel as class counsel. As fully explained herein, each of the requirements for certification of a Fed. R. Civ. P. 23(b)(3) class action is satisfied.

## BACKGROUND AND STATEMENT OF RELEVANT FACTS

### A.  The Class Definition.

1.      Colton is pursuing his statutory and associated declaratory judgment claims, against

Carbon Creek on behalf of himself and a proposed Class defined as follows:

> All non-excluded persons or entities who are legally entitled to a
> share of proceeds received by Carbon Creek derived from the sale
> of production from any wells producing oil, gas, or related
> hydrocarbons in Wyoming who: (1) have received late payments
> from Carbon Creek at any time since July 12, 2014, on oil, gas, and
> related hydrocarbons produced and sold by Carbon Creek from
> Wyoming wells; and (2) have not received interest from Carbon
> Creek at the statutory rate of eighteen percent per annum on such
> late payments.
>
> Excluded from the Class are: (1) Carbon Creek, its affiliates,
> predecessors, employees, officers, and directors; and (2) agencies,
> departments, or instrumentalities of the United States of America.

2.      In addition to Colton, as set forth in Colton's accounting expert's report, based on

the information and data produced by Carbon Creek in this class action litigation, there are more

than 2,300 Class members who are legally entitled to a portion of the proceeds from the sale of

oil, gas, or related hydrocarbons produced from wells operated by Carbon Creek in Wyoming, and

whose untimely payments did not include the requisite eighteen percent (18%) interest. (**Ex. 1**, p.

7, ¶56, Ex. D to Expert Report of Royce Porter, pp. 22-76).

### B.  The Operator's Obligations Under the WRPA.

3.      The WRPA is a remedial statute enacted in 1982 to stop oil and gas producers, like

Carbon Creek, from "retaining other people's money for their own use." *Cabot Oil & Gas Corp.

v. Followill*, 93 P.3d 238, 242 (Wyo. 2004) (internal quotations omitted). Consistent with the

WRPA's intended purpose, the WRPA is to be liberally construed to achieve its remedial purpose.

*Id*. Accordingly, the WRPA provides, in pertinent part:

> The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled thereto, except as hereinafter provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds.

Wyo. Stat. Ann. § 30-5-301(a).

4.     During Carbon Creek's Rule 30(b)(6) deposition, Carbon Creek's designated deponent, Craig Camozzi, confirmed that each of the 5,500 wells operated by Carbon Creek in Wyoming were purchased as legacy wells. (**Ex. 2**, Rule 30(b)(6) depo. of Carbon Creek, pp. 50:23-52:13).  Carbon Creek's testimony confirmed that each of the 5,500 wells that Carbon Creek has operated in Wyoming since February 2016 were previously drilled and were in full operation long before Carbon Creek acquired the assets and became the operator of those wells. (Ex. 2, pp. 50:23-52:13).

5.     When an operator fails to pay the proceeds received from the sale of the production of oil, gas or other related hydrocarbons from any well in the State of Wyoming to the persons legally entitled thereto within the specific statutory payment deadlines, the WRPA provides:

> **Any lessee or operator**, purchaser or other party legally responsible for payment who violates the provisions of this article is liable to the person or **persons legally entitled to proceeds from production for the unpaid amount or such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance** from the due date specified in W.S. § 30-5- 301(a).

Wyo. Stat. Ann. § 30-5-303(a) (emphases added).

6.     Wyo. Stat. Ann. §  30-5-301(a) states in pertinent part states:

> The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming **shall be paid to all persons legally entitled thereto**, except as hereinafter provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter **not later than sixty (60) days after the end of the calendar month within which subsequent production is sold . . .**

7.     The WRPA provides no exceptions for an operator's failure to timely remit proceeds to the persons legally entitled thereto in accordance with Wyo. Stat. Ann. § 30-5-301(a).

8.     The WRPA provides that "[i]n instances where payment cannot be made for any reason within the time limits specified in W.S. 30-5-301(a), the lessee or operator, purchaser or other party legally responsible for payment shall deposit all proceeds credited to the eventual interest owner to an escrow account . . ." Wyo. Stat. Ann. § 30-5-302.

9.     If an operator does not timely place the funds into escrow or distribute the proceeds to the persons legally entitled thereto, the operator is obligated to automatically include the requisite statutory interest when payment is eventually made. Wyo. Stat. Ann. § 30-5-303.

**C.  Carbon Creek's Repeated Untimely Payments to Colton and the Class.**

10.     Carbon Creek is engaged in the business of drilling and producing wells in the State of Wyoming consistent with the definition of an "Operator" under the WRPA. (**Ex. 4**, Objections and Responses to Plaintiff's First Requests for Production of Documents, Interr., and Requests for Admissions, Interr. No. 8, p. 8 and RFA No. 1, p. 14**)**.

11.     Colton owns an interest in the oil and gas produced from numerous wells located in the State of Wyoming which are operated by Carbon Creek. (**Ex. 3**, Colton's July 2020 Revenue Statement).

12.     One of the wells in which Colton owns an interest and Carbon Creek is the operator is the T-Chair Fed 4376 3-12 Well located in Campbell County, Wyoming. (Ex. 3, pp. 1-4, **Ex. 5.**

Well List produced by Carbon Creek at Bates No. CCE_01436, p. 40; **Ex. 6,** Objections and Responses to Plaintiff's Second Set of Requests for Production of Documents and Requests for Admission, RFA No. 5, pp. 3-4).

13.    Colton owns an interest in the T-Chair Fed 4376 3-12 Well through his overriding royalty interest under several oil and gas leases which he acquired in April 2007. (**Ex. 7,** Plaintiff's Supplemental Objections and Responses to Carbon Creek's First Set of Interrogatories, Supp. Answer to Interr. No. 1, p. 3).

14.    Carbon Creek is the "Operator" as defined in the WRPA of the T-Chair Fed 4376 3-12 Well because it has entered into a legal arrangement which obligates it to remit proceeds derived from the natural gas produced therefrom. (Ex. 6, RFA No. 5, pp. 3-4).

15.    The T-Chair Fed 4376 3-12 Well went into production in February 2008 and has continuously produced oil gas or other related hydrocarbons. (Ex. 2, pp. 42:15-43:1, and 49:17-50:2; **Ex. 8,** Wyoming Oil and Gas Conservation Production Records for T-Chair Fed 4376 3-12 Well, pp. 1, 3-5).

16.    Despite its continuous production of oil, gas or other related hydrocarbons from the T-Chair Fed 4376 3-12 Well, Carbon Creek did not remit the proceeds associated with the sale of natural gas produced from the T-Chair Fed 4376 3-12 Well in the following months, July 2019 – February 2020. (Ex. 3, pp. 1-4).

17.    Colton received the proceeds from his interest in the T-Chair Fed 4376 3-12 for the months of July 19 – February 2020 on his July 13, 2020 royalty payment. (Ex. 3, pp. 1-4).



(Ex. 3, p. 1).

18.    The July 13, 2020 royalty payment Carbon Creek made to Colton reflects the payments were more than 60 days past the July 2019 – February 2020 sales dates, rendering Carbon Creek's payment to Colton untimely under the WRPA.[1]

19.    Carbon Creek's July 13, 2020 royalty payment to Colton did not include a calculation or payment of the eighteen percent (18%) interest payment required pursuant to Wyo. Stat. Ann. § 30-5-303. (Ex. 1, p. 6, ¶ 49; and *see generally* Ex. 3).

---

[1] *See* F.R.E. 201(b)(2), permitting courts to take judicial notice of facts that are not subject to reasonable dispute and can be accurately and readily determined.

20.     These above-described untimely payments of proceeds to which Colton was entitled are not unique to Colton. In fact, Carbon Creek admitted that despite the fact that Carbon Creek has consistently produced natural gas from the approximately 5,500 wells its operates in the State of Wyoming since February 2016, it did not make any payments to the more than 2,300 proposed Class members during the following months: September 2019 through March 2020, August 2020, September 2020, November 2020, and March 2021 (the "Missing Payment Months"). (Ex. 2, pp. 61:2-63:14).

21.     Carbon Creek has produced no payment detail for any of the Missing Payment Months because Carbon Creek did not issue <u>any</u> checks to <u>any</u> owners during those months. (**Ex. 9**, Letter from Carbon Creek's Counsel RE: Missing Payment Month Data; Ex. 2, pp. 61:2-63: 14).

22.     When Carbon Creek did eventually distribute its untimely payments to Colton and the proposed Class members related to production associated with the Missing Payment Months, Carbon Creek did not calculate or pay  the statutorily required interest at eighteen percent (18%) as required by Wyo. Stat. Ann. § 30-5-303 of the WRPA. (Ex. 1, p. 6, ¶ 49; Ex. 2, p. 72:3-15).

23.     In addition to the Missing Payment Months identified herein, Carbon Creek consistently failed to timely remit proceeds as required under Section 30-5-303(a) of the WRPA to Colton and the Class members since Carbon Creek acquired its interests and began operating the wells in Wyoming in July 2016. (Ex. 1, p. 6, ¶48, Ex. C thereto, p. 17, Chart Showing Untimely Payments Made by Carbon Creek Each Month).

24.     Carbon Creek testified that: (1) if Carbon Creek had made any interest payments to any of the proposed Class members those calculations and payments would have been reflected in the payment detail produced by Carbon Creek; and (2) that the payment detail produced by Carbon

Creek does not reflect that Carbon Creek ever paid any interest to Colton or any other Class member. (**Ex. 2**, p., 72:3-15).

## ARGUMENT

### I.   LEGAL STANDARD.

Fed. R. Civ. P. 23(a) establishes four prerequisites to the maintenance of any class action: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims of the representative plaintiffs are typical of the claims of the class; and (4) the representative plaintiffs will fairly and adequately protect the interest of the class. In addition to these four criteria, a Rule 23(b)(3) class must also satisfy the requirements that the common questions of law or fact predominate over the individual questions ("predominance"), and that a class action is superior to individual actions for resolving the claims ("superiority").

A party seeking class certification must affirmatively demonstrate his compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 must be liberally interpreted, and its policy is to favor maintenance of class actions. *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25–26 (7th Cir. 1975) (citing *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968)). This policy is especially strong in instances where denial of class status would effectively terminate further litigation. *See, Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972).

As discussed below, this case satisfies each of the four prerequisites under Fed. R. Civ. P. 23(a), as well as the prerequisites for certification of a class under Fed. R. Civ. P. 23(b)(3).

## II.     THE FOUR PREREQUISITES OF FED. R. CIV. P. 23(a) ARE SATISFIED.

### A.  Numerosity.

Rule 23(a)(1) requires that the proposed class be sufficiently numerous to make joinder of all potential class members impracticable.  To satisfy this requirement, Colton must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *Decoteau v. Raemisch*, 304 F.R.D. 683, 687 (D. Colo. 2014). The numerosity requirement is satisfied in this case because there are more than 2,300 members of the defined Class who have already been identified by Colton and Colton's accounting expert. (Ex. 1, p. 7, ¶56, Ex. D, pp. 22-76**).** In other class actions involving far less class members, this Court and other district courts within the Tenth Circuit have found that the numerosity requirement was satisfied. *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo. 2002) (finding that a class of over 700 individuals satisfied Rule 23(a)(1)'s numerosity requirements); *Decoteau,* 304 F.R.D. at 687 (holding that a class of 500 persons satisfied the numerosity requirement); *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 683 (D.N.M. 2011) (recognizing that joinder of "several hundred tenants and home owners" would be impracticable, and thus the proposed class met the numerosity requirement). Thus, the numerosity requirement is satisfied.

### B.  Commonality.

The second Rule 23(a) requirement is the existence of questions of law or fact common to the class.  In order to satisfy the commonality requirement, the proposed class must raise a common contention that it is "capable of classwide resolution." *Wal-Mart Stores, Inc.,* 564 U.S. at 350. Rule 23(a)(2) does not require the plaintiff to show that all facts and legal issues are common to class. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018). Rather, a finding of commonality requires only a single question of law or fact common to the entire class. *Id*. The Supreme Court

has instructed that there is a "common" question "if there is some glue holding the class members'

allegations together. *Id. citing to Wal-Mart Stores, Inc*. 564 U.S. at 352 (internal quotations

omitted). Accordingly, the "commonality" prong of this Court's Rule 23 analysis is "fairly easily

met." *Nicodemus v. Union Pac. Corp.,* 204 F.R.D. 479, 489 (D. Wyo. 2001) (*overruled on other*

*grounds*).

 The class here presents following common questions of law and fact:

  a. Whether Carbon Creek has made untimely payments to the members of the Class
on Carbon Creek's production and sale of oil, gas, and related hydrocarbons from
wells in the State of Wyoming in which the Class members own an interest, at any
time since July 2014?

  b. Whether, and to what extent, Carbon Creek has failed to calculate and pay the Class
members the requisite eighteen percent (18%) per annum interest on those untimely
payments which Carbon Creek has made to such Class members?

  c. Whether Carbon Creek's failure to pay eighteen percent (18%) interest to Colton
and the Class on any untimely payments constitutes a violation of Wyo. Stat. Ann.
§ 30-5-303?

(*See* Dkt. No. 1, p. 7). Thus, if this Court finds that Carbon Creek, as the operator of the wells, is

bound by the WRPA, and that Carbon Creek has made untimely payments but failed to pay interest

in accordance with the WRPA, then the Court must find that common issues exist. *Menocal,* 882

F. 3d at 914.

 The undisputed evidence in this case makes this Court's inquiry fairly simple. There is no

dispute that as the operator of the 5,500 wells at issue, Carbon Creek is obligated to abide by the

payment obligations outlined in the WRPA. (Ex. 2, p. 48:2-10, Q: "Let's talk a little more about

Carbon Creek's understanding of its obligations to comply with the Wyoming Royalty Payment

Act. Is there any dispute here that Carbon Creek and affiliated entities have an obligation to abide

by the Wyoming royalty payment act" A: "No."). There is also no real dispute that on certain

11

occasions Carbon Creek failed to timely remit payments to Colton and the other Class members (Ex. 2, pp. 61:2-63:14; Ex. 9), and when such payments were eventually made by Carbon Creek to Colton and the other Class members, Carbon Creek failed to include the requisite eighteen percent (18%) per annum interest. (Ex. 1, p. 6, ¶49; Ex. 3, pp. 1-4).

Carbon Creek's uniform obligations under the WRPA, its uniform failure to timely remit proceeds, and its uniform failure to include the requisite statutory interest is the "glue holding" the class members' allegations together. *Menocal,* 882 F.3d at 914 (*citing to Wal-Mart Stores, Inc*. 564 U.S. at 352). Therefore, common issues of law and fact exist, and Rule 23(a)(2)'s commonality requirement is satisfied.

### C. Typicality.

Fed. R. Civ. P. 23(a)(3) provides that a party seeking class certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3)'s typicality requirement is satisfied "so long as there is a sufficient nexus between the claims of the class representative and the common questions of law or fact which unite the class. *Decoteau*, 304 F.R.D. at 689.  "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal,* 882 F.3d at 914. Here, Colton and the other members of the defined Class share an identical claim for relief: Carbon Creek's breach of its obligations to automatically include eighteen percent (18%) per annum interest on its untimely payments. (Ex. 1, pp. 5-7, ¶¶ 29-58; Ex. 2, pp. 48:2-10, 72:3-15). Further, Colton and the other members of the proposed Class have been damaged by Carbon Creek's uniform practice of not including the statutorily required interest on untimely payments. (Ex. 1, p. 7, ¶56, Ex. D, pp. 22-76).

Carbon Creek has indicated it will contend that Colton's claims are atypical of the other Class members because he owns an overriding royalty interest, while some members of the Class own royalty and working interests, as defined under Section 30-5-304 of the WRPA. However, differing ownership interests are immaterial under the WRPA. Wyo. Stat. Ann. § 30-5-301 clearly mandates that Carbon Creek remit proceeds to *all* persons legally entitled thereto, regardless of their form of ownership. Carbon Creek has also indicated that it will contend that Colton's claims are atypical because none of the wells in which Colton owns an interest are affected by the 6-month grace period provided for in Wyo. Stat. Ann. § 30-5-301, after a new well has been drilled. However, as the evidence here confirms, none of the 5,500 wells at issue are affected by the 6-month grace period because none of the wells were drilled within 6 months prior to the time in which Colton and the proposed Class members seek damages. (Ex. 2, p. 51:3-13, Q: "And we all agree that the original six-month date doesn't really apply to any of these wells since they are legacy wells?" A: Yes." . . . Q: "Right, they've all been producing long before Carbon Creek, or before Carbon Creek Purchased the assets?" A: "Correct.").

In fact, Colton's claims are not only typical, but identical, of the claims of the Class because Colton suffered the same injury based on the same statutory provisions as the proposed Class members and is seeking the same remedy for himself and the members of the Class. Thus, the typicality requirement is satisfied.

### D.  Adequacy of Representatives.

The fourth Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has recognized that in evaluating the adequacy of representation requirement, a court should determine: (1) whether the named plaintiff and their counsel have any conflicts with other class

13

members; and (2) whether the named plaintiff's counsel will vigorously prosecute the action on behalf of the class. *Sherman v. Trinity Teen Sols., Inc.*, 2022 WL 17573837, at *7 (D. Wyo. Oct. 5, 2022) (*citing to Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)).

In this case, the adequacy of representation requirement is satisfied because Colton does not have any conflicts of interests with the other members of the proposed Class, and because Colton and his counsel have been vigorously prosecuting this class action on the Class members' behalf. (**Ex. 10,** Declaration of Gregg B. Colton, ¶¶ 8-9). In particular, the interests of Colton are fully aligned with those of the other Class members, because both Colton and the Class members have been damaged by the same common course of conduct by Carbon Creek. (*See generally* Ex. 1). In addition, Colton's attorneys have vigorously prosecuted this class action litigation up to this point and will continue to vigorously prosecute this class action case to its conclusion. (Ex. 10, ¶¶ 7-9).

Courts have also recognized that adequacy of representation is satisfied when "class counsel is qualified, experienced and able to conduct the proposed litigation." *Soseeah v. Sentry Ins.*, 2013 WL 11327129, at *5 (D.N.M. Nov. 4, 2013). Colton is represented by attorneys who have substantial experience litigating natural gas royalty underpayment cases, including numerous natural gas royalty underpayment class actions which have been successfully resolved on a class-wide basis. (**Ex. 11,** Burrows Declaration, ¶¶ 1-7; **Ex. 12,** Barton Declaration, ¶¶ 1-7, **Ex. 13**, Seth Jones Declaration, ¶¶ 1-4). Thus, the adequacy of representation requirement is satisfied.

## III.    THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS UNDER RULE 23(b)(3) ARE ALSO SATISFIED.

After the requirements of Rule 23(a) are satisfied, the Court must next consider whether the requirements of Rule 23(b) are satisfied. Plaintiffs seek to certify a Class pursuant to Rule

23(b)(3). Rule 23(b)(3) permits the maintenance of a class action if "the court finds that the questions of law or fact to Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Predominance.

Rule 23(b)(3)'s predominance requirement is related to Rule 23(a)(2)'s commonality requirement. *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019). The primary distinction between Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement is that the latter is somewhat more demanding. *Id*. To certify a class under Fed. R. Civ. P. 23(b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

Rule 23(b)(3)'s predominance prong does not require a plaintiff to show "that **all** of the elements of the claim entail questions of fact and law that are common to the class" or "that the answers to those common questions [are] **dispositive**" of the claim. *Naylor Farms, Inc.,* 923 F.3d at 789 (emphases added). Instead, the predominance inquiry "asks whether the common, aggregation-enabling[ ] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* The Supreme Court has described "individual issues" as issues where the members of the proposed class will need to present varying evidence from member to member. *Tyson Foods, Inc. v. Bouaphakeo, et al.*, 577 U.S. 442, 453 (2016). While common, predominating issues are those which can be proved on a classwide basis using the same or generalized evidence. *Id*.

With respect to claims involving an oil and gas payors' failure to include interest on untimely payments, the leading case comes for the Federal District Court for the Eastern District

of Oklahoma captioned *Cline v. Sunoco, Inc. (R&M),* 333 F.R.D. 676 (E.D. Okla. 2019).[2] In *Cline,*
the district court certified a class involving Oklahoma's similar late payment statute finding that
the following common questions of law and fact predominated: (1) whether the defendant operator
owed interest to the class for making late payments; and (2) whether the defendant's failure to pay
interest on late payments constitutes a violation of Oklahoma's late payment statute. *Id.* at 686.
The defendant in *Cline,* like Carbon Creek will argue here, pointed to a number of individual
questions which the court would have to consider before deciding liability and damages. *Id.* at 687.
These included certain "contracts between [the defendant] and various well owners, the
marketability of title, indemnification agreements, waivers, potential third-party litigation, [the
defendant's] proposed defenses, and equitable remedies." *Id.* However, the Court found that none
of these issues predominated, and that "many of these challenges to class certification are
overexaggerated and largely incredible." *Id.*

---

[2] In fact, Colton's counsel has been unable to find a single contested motion for class certification on a case involving the late payment of royalties since the *Cline* opinion was issued. The parties in all post-*Cline,* classwide, late-payment cases entered into a class settlement agreement before or immediately following, the certification stage. (*Underwood, et al. v. NGL Energy Partners*, Case No. 21-CV-0135-CVE-SH (N.D. Okla.), **Ex. 14**, pp. 3-4; January 11, 2023 order certifying settlement class in *Lee v. Petroquest, L.L.C. et al.*, Case No. 16-CV-516-KEW (E.D. Okla.), **Ex. 15**, pp. 3-4; July 12, 2022 order certifying settlement class in *Wake Energy, LLC v. EOG Resources Inc.*, Case No. 20-CV-00183-ABJ (D. Wyo.), **Ex. 16**, pp. 2-4; April 12, 2022 order certifying settlement class in *McKnight Realty Co. v. Bravo Arkoma, L.L.C.*, 2022 WL 1768860, *2 (E.D. Okla. April 12, 2022); April 12, 2022 order certifying settlement class in *Dietrich v. Enerfin Resources I L.P., et al.*, Case No. 20-CV-084-KEW (E.D. Okla.), **Ex. 17**, pp. 3-4; August 17, 2021 order certifying settlement class in *Kernen v. Casillas Operating L.L.C.*, 2021 WL 5989364, *2 (W.D. Okla. August 17, 2021); April 12, 2021 order certifying settlement class in *Miller v. DCP Operating Co. L.P.*, Case No. 6:18-CV-00199-JH (E.D. Okla. April 12, 2021), **Ex. 18**, pp. 3-5; January 5, 2021 order certifying settlement class *in Price v. Plains Marketing, L.P.*, Case No. 19- CV-390-KEW (E.D. Okla.), **Ex. 19**, pp. 3-4; December 16, 2021 order certifying settlement class in *McClintock v. Enterprise Crude Oil LLC*, 2020 WL 12814737, *2 (E.D. Okla. December 16, 2021); March 2, 2020 order certifying settlement class in *Ashcroft Group, LLC v. Silver Creek Oil & Gas, LLC*, Case No. 16-CV-388-KEW (E.D. Okla.), **Ex. 20**, pp. 3-5; November 26, 2019 order certifying settlement class in *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc.*, Case No. 6:17- CV-00336-KEW (E.D. Okla. November 26, 2019) **Ex. 21**, pp. 3-4; October 30, 2019 order certifying settlement class *in Dasa Investments, Inc. v. Enervest Operating, L.L.C.*, 2019 WL 8163862, *2 (E.D. Okla. October, 2019); September 28, 2018 order certifying settlement class in *Reirdon v. Cimarex Energy Co.*, Case No. 6:16-CV-0113-KEW (E.D. Okla.), **Ex. 22**, pp. 2-4; September 21, 2018 order certifying settlement class in *McNeill v. Citation Oil & Gas Corp.*, 6:17-CV-00121-KEW (E.D. Okla. September 21, 2018) **Ex. 23**, pp. 3-5; and October 17, 2017 order certifying settlement class in *Reirdon v. XTO Energy Inc.*, Case No. 6:16-CV-00087-KEW (E.D. Okla.), **Ex. 24**, pp. 3-4.).

Any attempt by Carbon Creek to make similar challenges here will be even more "incredible." Unlike other states with similar royalty payment statutes, the WRPA does not provide any exceptions for an operator's untimely payment of proceeds. *See e.g.* OK ST T. 52 § 570.10(D)(2) (Oklahoma's late payment statute provides for reduced interest when an owners title is not marketable).[3] To the contrary, the WRPA provides that if the payments cannot be made "**for any reason** within the" applicable time frames, the operator "**shall** deposit all proceeds credited to the eventual owner to an escrow account . . ." if the operator wishes to avoid paying 18% interest. Wyo. Stat. Ann. § 30-5-302 (emphases added); *Morris v. CMS Oil & Gas Co*., 227 P.3d 325, 329 (Wyo. 2010). The Wyoming Supreme Court has demonstrated that the "for any reason" language in Section 30-5-302 has no exceptions, and that equity is not a factor to be considered as a justification for nonpayment of proceeds. *Cities Serv. Oil & Gas Corp. v. State*, 838 P.2d 146, 156 (Wyo. 1992).

Like in *Cline*, the predominating questions for this Class are:

(1) whether Carbon Creek has made untimely payments to Colton and the members of the proposed Class;

(2) whether Carbon Creek has failed to pay Colton and the members of the proposed Class eighteen percent (18%) interest on those untimely payments; and

(3) whether Carbon Creek's failure to include the requisite statutory interest to Colton and the members of the class constitutes a violation of the WRPA.

---

[3] *See also* N.D.C.C. § 47-16-39.1, North Dakota's late payment statute providing exceptions to its interest on late payment requirement "in the event of a dispute of title" or "if a mineral owner cannot be located after a reasonable inquiry by the operator."

Colton alleges that Carbon Creek has for years ignored its obligation to automatically include the requisite statutory interest. The deposition testimony and business records produced by Carbon Creek have confirmed Colton's allegations, and also confirmed that Carbon Creek has treated each of the more than 2,300 Class members the same with respect to statutory interest, and that it applies its statutory interest policy uniformly to all owners – 100% of the time. (Ex. 1, pp. 6-7, ¶¶ 49 and 56, Ex. D, pp. 22-76, Ex. 2, pp. 61:2-62:18).

Moreover, as demonstrated *supra*, Colton's accounting expert has developed a single methodology that he used based on Carbon Creek's production and accounting records to calculate the damages to Colton and the Class members resulting from Cabron Creek's continuous violations of the WPRA. (Ex. 1, pp. 4-7, ¶¶29-58). Carbon Creek's production and accounting data included, among other things: (1) the owner name and number; (2) the owners' interest type and decimal ownership; (3) the sale (production) date; (4) property number and name; (5) product type; (6) gross volume; (7) gross value; (8) net value; (9) MCF volume; (10) MMbtu volume; (11) sales amount; (12) owner net amount; (13) check date; and (14) check amount. (Ex. 1, pp. 4-5, ¶23). Based on this data produced by Carbon Creek, Colton's accounting expert, Mr. Porter is able to determine whether each payment to each proposed Class member each month was made outside the applicable timeframe set forth in the WRPA, (Ex. 1, ¶¶29-48) and the amount of interest owed to each Class member each month. (Ex. 1, ¶¶52-57). Accordingly, Mr. Porter has concluded that the untimely payment statutory interest owed to Colton and the other proposed Class members to be approximately $2,807,092.78, as reflected in his expert report which breaks down the number of damages associated with each of the more than 2,300 proposed Class members. (Ex. 1, p. 7. ¶56, Ex. D pp. 22-76).

18

By relying on Carbon Creek's sworn testimony, written discovery responses, and production and accounting records, Colton has satisfied Rule 23(b)(3)'s predominance requirement because each of the three predominating common questions can be answered using common or generalized evidence. *Tyson Foods, Inc.*, 577 U.S. at 453. First, Mr. Porter's analysis of the applicable production and accounting records shows that Carbon Creek has consistently made untimely payments to Colton and the members of the proposed Class. (Ex. 1, ¶¶ 29 – 48). Second, Mr. Porter's analysis and Carbon Creek's sworn testimony confirms that Carbon Creek uniformly failed to pay Colton and the members of the proposed Class interest on all such untimely payments. (Ex. 1, ¶¶ 49-51, Ex. 2, p. 72:3-15). Third, as Carbon Creek's designated deponent testified, there is no dispute that Carbon Creek has an "obligation to abide by the [WRPA]," (Ex. 2, p. 48:2-10), or that Carbon Creek failed to abide by WRPA with respect to Colton and each of the more than 2,300 Class members by failing to include statutory interest on its untimely payments, in direct contraction of Section 30-5-303.

The Eastern District of Oklahoma's order in *Cline*, along with the applicable Tenth Circuit precedent affirms that Colton's demonstration of class wide liability and damages satisfies Rule 23(b)(3)'s predominance requirement. (Fed. R. Civ. P. 23(b)(3)). The predominance prong of Rule 23(b)(3)'s analysis, is therefore, satisfied.

### B. Superiority.

The second requirement for certifying a Rule 23(b)(3) class is that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The superiority requirement is satisfied here because class adjudication will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*

*v. Windsor*, 521 U.S. 591, 615 (1997). "The policy at the very core of the class action mechanism is to overcome the problem that smaller recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id*. at 617. As best stated by Judge Posner, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, 2020 WL 639613, at *8 (D. Neb. Feb. 11, 2020), *citing to Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004).

In determining whether the superiority prong is satisfied, Rule 23(b)(3) lists four non-exclusive factors including:

1.   The class members' interests in individually controlling the prosecution or defense of separate actions;

2.  The extent and nature of any litigation concerning the controversy already begun by or against class members;

3.  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4.  the likely difficulties in managing a class action.

An analysis of each of these four factors demonstrates that the superiority prong is satisfied. First, there is no evidence that any of the Class members are interested in individually controlling the prosecution in separate lawsuits. Carbon Creek has only identified one instance in which it paid interest to an owner in conjunction with an untimely payment claim. (Ex. 4, RFP No. 4, p. 11). Moreover, nearly 80% of the more than 2300 Class members, have damages amounting to less than the $402 filing fee required to file a complaint in this Court, thus making it uneconomical for them to individually litigate their claims against Carbon Creek. (Ex. 1, p. 7, ¶56, Ex. D, pp. 22-76).

Second, as stated above, there has been no pending, separate litigation concerning this controversy initiated by any of the proposed Class members, a fact which clearly weighs in favor of granting class certification. *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 300 (D. Utah 2021).

Third, concentration of the Class members' litigation in this forum is desirable. All of the natural gas production at issue occurred in this judicial district, Carbon Creek transacts significant business in this judicial district, and the Class members' claims are governed by Wyoming substantive law.

Fourth, this class action does not present any unusual issues which would make it difficult for this Court to manage this class action, if certified. Carbon Creek owes the same statutory obligations to each of the Class members, and the primary liability issue is the same for all of the Class members. Moreover, Colton's royalty accounting expert can determine the damages sustained by each of the Class members utilizing a common method of calculating the statutory interest in which they are owed. (Ex. 1, ¶¶ 49-57). Thus, the superiority requirement of Rule 23(b)(3) is satisfied.

**CONCLUSION**

Because Colton satisfies each of the elements required for certification under Rule 23(b)(3), Colton respectfully requests that the Court enter an order certifying the Class, appointing Colton as class representative, and appointing Colton's counsel and class counsel.

Submitted: September 8, 2023

By: _____

Stacy A. Burrows (Admitted PHV
George A. Barton (admitted PHV)
Seth K. Jones (admitted PHV)
BARTON AND BURROWS, LLC
5201 Johnson Drive, Ste. 110
Mission, KS 66205
(913) 563-6250
George@bartonburrows.com
Seth@bartonburrows.com

-and-

Kelly Shaw
Wyo. Bar No. 7-5624
Travis W. Koch
Wyo. Bar No. 7-5418
KOCH LAW. P.C.
121 W. Carlson St. Suite 3
Cheyenne, WY 82009
(307) 426-5010
kshaw@kochlawpc.com
tkoch@kochlawpc.com

*Attorneys for Plaintiff Gregg B. Colton,
on behalf of himself and the Class of
similarly situated persons*

22