

FILED

3:28 pm, 8/15/24

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

---

GREGG B COLTON, on behalf of
himself and a class of similarly situated
persons,

        Plaintiff,

   v.

CARBON CREEK ENERGY, LLC,

        Defendant.

Case No.  2:22-CV-00150-ABJ

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

---

THIS MATTER comes before the Court upon *Plaintiff's Motion for Class Certification* and corresponding *Brief in Support of Plaintiff's Motion for Class Certification*. ECF No. 46; ECF No. 47. Plaintiff, Gregg B. Colton (hereinafter "Plaintiff"), seeks certification of his proposed Class in this action against Defendant Carbon Creek Energy, LLC (hereinafter "Carbon Creek"). Carbon Creek responded in opposition to Plaintiff's proposed class certification, and Plaintiff has responded. ECF No. 50; ECF No. 53.

The Court, having considered the filings, the applicable law, and being otherwise fully advised in the premises hereby finds and orders that Plaintiff's Motion for Class Certification (ECF No. 46) is **GRANTED**.

1

## BACKGROUND

In this case, Plaintiff seeks to maintain a class action against Carbon Creek, alleging that the latter violated the Wyoming Royalty Payment Act (WRPA) by: (1) repeatedly failing to timely pay Plaintiff and others similarly situated their share of proceeds from the sale of oil, gas, or related hydrocarbons from wells operated by Carbon Creek; and (2) failing to calculate or include a statutorily prescribed eighteen percent per annum interest upon such late payments. *See* ECF No. 1. Here, Plaintiff requests certification of his proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(3). ECF No. 46; ECF No 47. Before evaluating Plaintiff's request for class certification, the Court briefly explains the WRPA itself, both the history between the parties and that between Carbon Creek and members of the proposed Class, as well as the proposed Class definition.

## I.     The WRPA and Operator Obligations.

The WRPA is a remedial statute, enacted in 1982, to stop oil and gas producers from "retaining other people's money for their own use," and it is to be liberally construed to achieve its intended remedial purpose. *Cabot Oil & Gas Corp. v. Followill*, 93 P.3d 238, 242 (Wyo. 2004) (internal quotations omitted). The WRPA provides, in pertinent part:

> The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled thereto, except as herein provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds.

Wyo. Stat. Ann. § 30-5-301(a). Separately, and notwithstanding the above provision, the

WRPA provides that:

> Payments shall be remitted to the person or persons entitled to proceeds from
> production annually for the aggregate of up to twelve (12) months
> accumulation of proceeds if the total amount owed is one hundred dollars
> ($100.00) or less.

Wyo. Stat. Ann. § 30-5-301(b)(i). These pertinent provisions function as the WRPA's

baseline for payments.

However, the WRPA separately provides penalties if an operator fails to meet their

obligations. When an operator fails to pay the proceeds received from sale of the production

of oil, gas or other related hydrocarbons from any well in Wyoming to the persons legally

entitled thereto within the specified statutory payment deadlines, the WRPA offers the

following remedy:

> Any lessee or operator . . . who violates the provisions of this article is liable
> to the person or persons legally entitled to proceeds from production for the
> unpaid amount of such proceeds, plus interest at the rate of eighteen percent
> (18%) per annum on the unpaid principal balance from the due date specified
> in W.S. [§] 30-5-301(a).

Wyo. Stat. Ann. § 30-5-303(a). "In instances where payment cannot be made for any reason

within the time limits specified in W.S. [§] 30-5-301(a), the lessee or operator, purchaser

or other party legally responsible for payment shall deposit all proceeds credited to the

eventual interest owner to an escrow account[.]" Wyo. Stat. Ann. § 30-5-302. If an operator

does not timely place funds into escrow or distribute the proceeds to the persons legally

entitled thereto, the operator is obligated to automatically include the requisite statutory

interest when payment is eventually made. *Id.*

## II.    Plaintiff and Carbon Creek.

The following history between Plaintiff and Carbon Creek is derived from those facts undisputed by the parties. Carbon Creek is engaged in the business of drilling and producing wells in Wyoming—consistent with the definition of an "Operator" under the WRPA. ECF No. 47, at 11 (citing ECF No. 47-4). Plaintiff—classified as an "overriding royalty interest owner"—owns an interest in the oil and gas produced from numerous wells located in Wyoming, which are operated by Carbon Creek. *Id.* (citing ECF No. 47-3).

One such well is the T-Chair Fed 4376 3-12 Well located in Campbell County, Wyoming. *Id.* at 11–12 (citing ECF Nos. 47-3, 47-5, 47-6). Plaintiff owns an interest in this well through his overriding royalty interest under several oil and gas leases which he acquired in April 2007, while Carbon Creek is the "Operator" as defined in the WRPA of this well because it has entered into a legal agreement which obligates it to remit proceeds derived from the natural gas produced therefrom. *See* ECF Nos. 47-6, 47-7. This well went into continuous production in February 2008, but Plaintiff alleges that Carbon Creek did not remit the proceeds associated with natural gas produced from the well from July 2019 to February 2020. *See* ECF Nos. 47-2, 47-8. Plaintiff ultimately received such proceeds on his July 13, 2020, royalty payment, albeit more than 60 days from July 2019 and allegedly without including a calculation or payment of the eighteen percent (18%) interest payment required under W.S. § 30-5-303. *See* ECF No. 47-3, at 1–4.

## III.    Carbon Creek and Members of the Proposed Class.

The following is largely drawn from Plaintiff's allegations but serve only to highlight the bases for Plaintiff's claims rather than the undisputed facts of the case.

Plaintiff alleges that his issues with Carbon Creek "are not unique to [him]." ECF No. 47, at 14. According to the Plaintiff, Carbon Creek admitted that "it did not make any payments to the more than 2,300 proposed Class members during the following months: September 2019 through March 2020, August 2020, September 2020, November 2020, and March 2021 (the 'Missing Payment Months')." *Id.*

Plaintiff continues his argument by stating that Carbon Creek "has produced no payment detail for any of the Missing Payment Months because Carbon Creek did not issue any checks to any owners during those months." *Id.* In his words, when Carbon Creek "did eventually distribute its untimely payments to [him] and the proposed Class members related to production associated with the Missing Payment Months," Carbon Creek similarly did not calculate or pay the statutorily required 18% interest. *Id.* Separately, he argues, Carbon Creek "consistently failed" to timely remit proceeds as per W.S. § 30-5-303(a) ever since they acquired its interests and began operating the wells in July 2016. *Id.*

## IV.   The Proposed Class Definition.

Included within his *Motion for Class Certification* and corresponding *Brief in Support*, Plaintiff proffers a proposed Class definition:

> All non-excluded persons or entities who are legally entitled to a share of proceeds received by Carbon Creek derived from the sale of production from any wells producing oil, gas, or related hydrocarbons in Wyoming who: (1) have received late payments from Carbon Creek at any time since July 12, 2014, on oil, gas, and related hydrocarbons produced and sold by Carbon Creek from Wyoming wells; and (2) have not received interest from Carbon Creek at the statutory rate of eighteen percent per annum on such late payments.

Excluded from the Class are: (1) Carbon Creek, its affiliates, predecessors, employees, and directors; and (2) agencies, departments, or instrumentalities of the United States of America.

ECF No. 46, at 2; ECF No. 47, at 9.

In addition to Plaintiff, and as set forth in his accounting expert's report (Mr. Porter), based on the information and data produced by Carbon Creek in this class action litigation, Plaintiff alleges that there are more than 2,300 Class members who are legally entitled to a portion of the proceeds from the sale of oil, gas, or related hydrocarbons produced from wells operated by Carbon Creek in Wyoming, and whose untimely payments did not include the requisite eighteen percent interest. ECF No. 47, at 9 (citing ECF No. 47-1).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 sets forth the basic prerequisites of a class action, as well as the types of class actions which may be maintained in federal court. *See* Fed. R. Civ. P. 23. Rule 23(a) lists the four basic prerequisites for any class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). After satisfying these prerequisites—otherwise known as "numerosity," "commonality," "typicality," and "adequate representation," respectively— Rule 23(b) additionally sets forth three types of class actions which may be maintained. *See* Fed. R. Civ. P. 23(b). A Rule 23(b)(3) class further requires that: (1) the common

questions of law or fact predominate over the individual questions ("predominance"); and

(2) a class action is superior to individual actions for resolving the claims ("superiority").

Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists matters pertinent to either finding:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

A party seeking class certification must affirmatively demonstrate their compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 584 U.S. 338, 350 (2011). A plaintiff bears a "strict burden of proof" to demonstrate compliance with Rule 23 and "[a] court that is not satisfied that the requirements of Rule 23 have been meet should refuse certification until they have been met." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1318 (10th Cir. 2013). To meet this burden, a plaintiff must prove that they have met the requirements of both Rule 23(a) and (b) that withstands "rigorous analysis." *Id.* at 1217 (quoting *Dukes*, 564 U.S. at 351). "If the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action." *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999).

## ANALYSIS

The Court finds that Plaintiff has satisfied his burden in seeking class certification, although his proposed Class definition must be altered with clearer reference to Wyo. Stat. Ann. § 30-5-301(b)(i). *See Davoll*, 194 F.3d at 1146. Plaintiff's *Brief in Support* largely follows the prerequisites of Rule 23(a) and the additional requirements under Rule 23(b)(3) for this class-type. *See generally* ECF No. 47. In opposition, Carbon Creek argues that the proposed Class cannot be certified, as Plaintiff fails to satisfy the commonality prerequisite (Rule 23(a)(2)), the typicality prerequisite (Rule 23(a)(3)), or the predominance and superiority requirements (Rule 23(b)(3)). ECF No. 50, at 12. They do not dispute the numerosity (Rule 23(a)(1)) or adequate representation (Rule 23(a)(4)) prerequisites.

On commonality, Carbon Creek raises four issues: (1) the existence of prior period adjustments (PPAs); (2) the WRPA's $100 threshold under Wyoming Statute § 30-5-301(b)(i); (3) joint-interest-billing (JIB) netting for working interest owners; and (4) a purported "knowledge" requirement for late payments under the WRPA. ECF No. 50, at 13–21. On typicality, they argue that Plaintiff's interest as an overriding royalty interest owner makes him an atypical class member *vis a vis* other proposed Class members with differing ownership interests. *Id.* at 22. On predominance, they argue that the individualized circumstances surrounding each payment would predominate over their common protocol for remitting payments, thus balkanizing the proposed Class. *Id.* at 22– 25. They briefly take the position that superiority cannot be established as predominance is lacking. *Id.* at 24 n.6.

The Court nonetheless agrees with Plaintiff, with the added caveat that the proposed Class definition must be amended to reflect both the $100 threshold and the twelve-month period under Wyo. Stat. Ann. § 30-5-301(b)(i). With that change, the Class may be certified. In explaining this decision, the Court goes through each prerequisite under Rule 23(a) and the additional requirements of Rule 23(b)(3), starting with numerosity.

## I.    Numerosity

Plaintiff has satisfied the numerosity requirement under Rule 23(a)(1). To satisfy the numerosity requirement, a plaintiff must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *Decoteau v. Raemisch*, 304 F.R.D. 683, 686–87 (D. Colo. 2014) (citing *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)).

Plaintiff argues that he has satisfied the numerosity requirement in this case because there are more than 2,300 members of the defined Class proposed, who have already been identified by him and his accounting expert. ECF No. 47, at 16. He also points to other cases in the Tenth Circuit, who have found that the numerosity requirement was satisfied with far less class members. *Id.* (internal citations omitted). Carbon Creek does not oppose the numerosity requirement, and the Court agrees with Plaintiff.

With more than 2,300 members identified within the proposed Class, the numerosity requirement under Rule 23(a)(1) can be satisfied. This Court, as well as both the Districts of Colorado and New Mexico, have found typicality satisfied with far fewer class members in their proposed classes. *See Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo. 2002) (finding that the numerosity requirement was satisfied with a class of over 700 individuals);

*Decoteau*, 304 F.R.D. at 687 (holding that a class of 500 persons satisfied the numerosity requirement); *Lowery v. City of Albuquerque*, 273 F.R.D. 668, 683 (D.N.M. 2011) (recognizing that joinder of "several hundred tenants and home owners" would be impracticable, and thus the proposed class met the numerosity requirement). Thus, the Court holds that the typicality prerequisite under Rule 23(a) is met.

## II.   Commonality

The proposed Class satisfies commonality, when redefined to include reference to Wyo. Stat. Ann. § 30-5-301(b)(i)'s $100 threshold and twelve-month payment period. To satisfy the commonality requirement under Rule 23(a)(2), the plaintiff must prove that all class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," thus being "capable of classwide resolution." *Dukes*, 564 U.S. at 350. This does not require the plaintiff to show that all facts and legal issues are common to the class. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018). Rather, a finding of commonality requires only a *single* question of law or fact common to the entire class. *Id.* There is a "common" question "if there is some glue holding the class members' allegations together." *Id.* (citing *Dukes*, 564 U.S. at 352). However, "what matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive resolution of the litigation." *Dukes*, 564 U.S. at 350; *see also Roderick*, 725 F.3d at 1218.

To satisfy the commonality prerequisite, Plaintiff presents three common questions of law and fact:

10

(a) Whether Carbon Creek has made untimely payments to the members of the Class on Carbon Creek's production and sale of oil, gas, and related hydrocarbons from wells in the State of Wyoming in which the Class members own an interest, at any time since July 2014?

(b) Whether, and to what extent, Carbon Creek has failed to calculate and pay the Class members the requisite eighteen percent (18%) per annum interest on those untimely payments which Carbon Creek has made to such Class members?

(c) Whether Carbon Creek's failure to pay eighteen percent (18%) interest to Colton and the Class on any untimely payments constitutes a violation of Wyo. Stat. Ann. § 30-5-303?

ECF No. 47, at 17 (citing ECF No. 1, at 7). In his rationale, "if th[e] Court finds that Carbon Creek, as the operator of the wells, is bound by the WRPA, and that Carbon Creek has made untimely payments but failed to pay interest in accordance with the WRPA, then the Court must find that common issues exist." *Id.* (citing *Menocal*, 882 F.3d at 914). Seeing this as a "fairly simple" inquiry, he concludes that "Carbon Creek's uniform obligations under the WRPA, its uniform failure to timely remit proceeds, and its uniform failure to include the requisite statutory interest is the 'glue holding' the class members' allegations together," thus satisfying the commonality requirement. *Id.* at 17–18.

In opposing commonality, Carbon Creek focuses on Plaintiff's last common question of law and fact. ECF No. 50, at 12–21. They argue that Plaintiff cannot satisfy the commonality requirement, as the Court would not be able to determine that Carbon Creek remitted late payments to each putative class member by answering a "common question." *Id.* at 12–13. In their view, such a "common question" would invariably involve subsidiary inquiries, rather than be answered in one stroke. *Id.* at 13. As they argue, such inquiries would require the Court to: (1) analyze each payment to determine whether its timing was

11

affected by a PPA; (2) examine each alleged "late" payment to determine whether it exceeded the WRPA's $100 threshold; (3) examine each working interest owners' account to determine whether the payment was subject to JIB netting; and (4) examine the circumstances surrounding each payment to determine whether Carbon Creek "knew" it was late. *Id.* Accordingly, they argue, the necessity of these inquiries undermines the commonality of Plaintiff's proposed class.

Plaintiff retorts that commonality is satisfied as common answers to their common questions would drive resolution to this litigation. ECF No. 53, at 6–7. In addition to noting that Carbon Creek focuses on only one common question, Plaintiff begins by arguing that Rule 23(a)(2) does not require him to show that every fact and legal issue is common to the class. *Id.* (citing *Menocal*, 882 F.3d at 914). He views Carbon Creek's position as "fatally flawed," for failing to address "why the common questions cannot be resolved with common answers" and instead raising "four hypothetical defenses it may raise related to a handful of Class members." *Id.* at 7. Nonetheless, seeking to address these "hypotheticals," Plaintiff argues that neither the existence of PPAs nor the WRPA's $100 threshold defeat commonality, that his accounting expert had properly accounted for the JIB netting for working interest owners, and that Carbon Creek's contention that it is only required to remit statutory interest on payments it "knew" were late is unfounded. *Id.* at 8–13.

The Court agrees with Plaintiff. In doing so, and despite Plaintiff construing them as "hypothetical defenses," the Court examines each of Carbon Creek's four contentions. Accordingly, the Court finds that neither the existence of PPAs, JIB netting for working interest owners, nor a purported "knowledge" element, defeats commonality. However, the

Court agrees with Carbon Creek insofar as the WRPA's $100 threshold creates an issue with commonality, but such issue is resolved by redefining the proposed Class with explicit regard to both the WRPA's $100 threshold and the twelve-month period required for payment. W.S. § 30-5-301(b)(i). The Court begins with addressing the existence of PPAs.

a.    The Existence of PPAs Does Not Defeat Commonality.

The existence of PPAs in this matter does not undermine commonality. While the WRPA does reference separate contracts in Wyo. Stat. Ann. § 30-5-301(a), it nonetheless makes no explicit exception for late payments when a PPA is made by an operator—a "late" payment is "late" regardless. "[T]here are no exceptions in the [WRPA] providing justification for royalty nonpayment." *Cities*, 838 P.2d at 156. Separate, but for that reason, "[e]quity is not a consideration" regarding late payments pursuant to the WRPA. *Id.*

Carbon Creek argues that the Court "cannot assume that each and every payment not remitted within 60 days is 'late' under the [WRPA]" and thus the Court "must consider PPAs that might affect whether the owner is 'legally entitled' to receive a payment." ECF No. 50, at 13. Highlighting their use of PPAs, Carbon Creek argues that if not accounted for on individual bases, a "PPA—analyzed in isolation—could be misinterpreted as a 'late' or 'incomplete' payment for the production sold in the subsequent month." *Id.* at 15. In support, they cite to several cases involving either PPAs or analogous circumstances to argue that commonality is also unsatisfied here. *Id.* at 14–15 (citing *Belmont v. BP Am. Prod. Co.*, 2015 WL 11019026 (D. Wyo. Jan. 8, 2015), and *Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312 (D.N.M. 2015)).

13

Plaintiff does not deny the existence of PPAs but rather argues that they do not defeat commonality. ECF No. 53, at 8–9. He argues that Carbon Creek's reliance on PPAs is erroneous for two reasons: (1) contrary to Carbon Creek's presumption, the WRPA does not provide an exception for late payments when a PPA is made by the operator; and (2) Carbon Creek ignores that Plaintiff's accounting expert analyzed the PPAs reflected in the payment detail in his report and found them to be insignificant. *Id.* at 8. He also construes Carbon Creek's contention as an "apparent attempt to raise some sort of equitable defense," while arguing that "Wyoming precedent clearly provides that such equitable defenses do not exist under the WRPA." *Id.* (citing *Cities Serv. Oil & Gas Corp. v. State*, 838 P.2d 146, 158 (Wyo. 1992)). He continues that Carbon Creek's reliance on *Belmont* and *Anderson Living Trust* "is entirely inapt" and can be distinguished from the instant case. *Id.* at 8–9. Lastly, to the extent that Carbon Creek disputes the findings of Plaintiff's accounting expert, such challenge is not proper at this stage. *Id.* at 9.

The Court agrees with Plaintiff. The existence of PPAs does not undermine commonality. The WRPA does not create a carveout to whether a payment is late by virtue of a PPA. Any "delay" is still a "delay," even if a PPA creates an altered timeline; when a payment is "late" under a PPA, it is still "late" under the WRPA. "Equity is not a factor for consideration because *there are no exceptions in the Act providing justification for royalty nonpayment*." *Cities*, 838 P.2d at 156 (emphasis added).

As for Carbon Creek's reliance on *Belmont* and *Anderson Living Trust*, the Court agrees with Plaintiff that such holdings should not fully guide in this matter. In *Belmont*, the "interest on late payment claims" sought by those plaintiffs were "secondary" and

14

entirely predicated on royalty underpayment claims. 2015 WL 11019026, at *10. Interest on late payments was not the crux of this Court's decision to decline class certification in *Belmont*. *Id.* The same was true with the District of New Mexico's decision in *Anderson Living Trust*, with the added consideration that the pertinent New Mexico statute explicitly differentiated interest rates if funds were placed into suspense accounts—a provision absent from the WRPA. 306 F.R.D. at 434, 460. Thus, there is significant rationale for this Court to distinguish its determination from those of the cases Carbon Creek relies upon.

Plaintiff is apt to note that exclusion of Mr. Porter's report is not proper at this stage as a mechanism for Carbon Creek to challenge his findings. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). Assuming Mr. Porter correctly notes that the PPAs are "insignificant," their presence here does not completely rebut a finding of commonality. ECF No. 53, at 8 (citing ECF No. 47-1, at 7, and ECF No. 53-1, at 2). Accordingly, while assuming Mr. Porter properly took into consideration Carbon Creek's PPAs, Carbon Creek's first issue is unavailing to rebut commonality. If a payment's timing is "late," it is "late" regardless of whether a PPA is present.

> b.   The WRPA's $100 Threshold Warrants Redefining the Class Without Defeating Commonality.

The WRPA's $100 threshold does not defeat commonality but does warrant modifying the proposed Class definition to include the WRPA's $100 threshold alongside the twelve-month period required for payment. "If the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action." *Davoll*, 194 F.3d at 1146; *see also Powers v. Hamilton Cnty. Pub. Def.*

*Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions . . . ."). Commonality focuses on whether at least one question exists that can be resolved on behalf of the entire class. *See Dukes*, 564 U.S. at 359. For a commonality challenge to impact that analysis, it should "destroy the possibility of resolving the common question on a *classwide* basis." *Chieftain Royalty Co. v. XTO Energy, Inc.*, 528 F. App'x 938, 942 (10th Cir. 2013) (emphasis original); *see Dukes*, 564 U.S. at 350 ("Dissimilarities within the proposed class are what *have the potential to impede the generation of common answers*.") (emphasis added) (citation omitted).

Carbon Creek argues that the WRPA's $100 threshold creates the necessity of individualized inquiry. They begin with reference to the WRPA itself, interpreted as stating that an operator need not remit payment until the aggregate amount of the owner's share of the well's production exceeds $100, or if such amounts have been accumulating for twelve months. ECF No. 50, at 16 (citing W.S. § 30-5-301(b)(i)). They argue this $100 threshold "renders it impossible to determine on a class-wide basis whether a particular payment was 'late' under the [WRPA]," as this would also require the Court to consider the value of each owner's share of the production as the date on which payment is due is dependent upon that value. *Id.* Citing to their own expert's analysis, which determined that more than one-half of the payments that Plaintiff's expert considered to be late did not exceed the $100 threshold, Carbon Creek takes the position that the $100 threshold completely undermines commonality. *Id.* at 16–17.

Plaintiff views Carbon Creek's argument—that the $100 threshold makes it impossible to determine on a class-wide basis whether a particular payment was late under

the WRPA—as erroneous. ECF No. 53, at 9–10. Plaintiff argues this statement "completely ignores the fact that multiple state court decisions" have certified classes "which did not specifically exclude or otherwise address the WRPA's $100 threshold." *Id.* at 9–10, 10 n.1 (citing ECF Nos. 53-2, 53-3). Construed as a variable that only impacts "the amount of damages suffered by Class members, not the identification of Class members themselves," Plaintiff argues that this threshold does not preclude class certification. *Id.* at 10 (citing *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019)). Moreover, Plaintiff reiterates that the $100 threshold is also accompanied by a twelve-month window for payment. *Id.* (citing W.S. § 30-5-301(b)(i)).

The Court largely agrees with Plaintiff insofar that the WRPA's $100 threshold does not defeat commonality but agrees with Carbon Creek insofar as it warrants hesitation. This caveat being that Plaintiff's proposed Class definition should be amended to reflect both the $100 threshold and the twelve-month period required for payment, as per Wyo. Stat. Ann. § 30-5-301(b)(i). *Davoll*, 194 F.3d at 1146; *see also Lawrence v. First Financial Investment Fund V, LLC*, 336 F.R.D. 366, 374 (D. Utah 2020) (citing *Davoll*, 194 F.3d at 1146, and *Powers*, 501 F.3d at 619).

Although Plaintiff is correct that the $100 threshold is a variable which would impact the amount of damages suffered by Class members, he is incorrect in arguing that this variable does not affect identification. While it would impact the amount of damages suffered by Class members, it would do so by *also* limiting the number of individuals who fall within the Class definition. While Plaintiff cites several state court decisions that certified classes "which did not specifically exclude or otherwise address" the $100

17

threshold, (ECF No. 53, at 10 n.1) assuming as correct Mimms's determination "that more than one-half of the payments" Mr. Porter considered to be "late" did not exceed the $100 threshold, (ECF No. 50, at 17) this a staggering figure which must be considered. Plaintiff aptly points out that the WRPA provides an exception to the $100 threshold for payments not rendered in twelve months. ECF No. 53, at 10 (citing W.S. § 30-5-301(b)(i)). Both provisions can be reconciled: a payment can be below the $100 threshold yet nonetheless "late" if not rendered in twelve months. Without seeking to determine the extent that such provisions overlap in the "more than one-half" figure Mimms advances, the Court still recognizes commonality when the proposed Class is redefined to encompass Class members either owed $100 or more, or those whose payment was to be rendered in twelve months. Paraphrased, the common question of law or fact would be: "Does Carbon Creek owe you $100 or more, or owe a balance due for twelve or more months?" Such a question would yield either "Yes" or "No"—a common answer which would drive resolution to this litigation. *See Dukes*, 564 U.S. at 350. Thus, while the $100 threshold does not defeat commonality, it does require the Court to redraw the Class's boundaries to *retain* commonality without improperly including those individuals included or exempted under § 30-5-301(b)(i).

      c.      JIB Netting for Working Interest Owners is Properly Addressed.

Based on Mr. Porter's analysis, in conjunction with the statements of Carbon Creek's Rule 30(b)(6) deponent, the Court finds that JIB netting for working interest owners was fully addressed and accounted for. Accordingly, this contention does not defeat commonality.

In raising this issue, Carbon Creek starts by noting that because working interest owners are required to pay a portion of costs associated with drilling and operating wells, determining whether they paid those owners on time differs from analysis applicable to royalty and overriding royalty interest owners. ECF No. 50, at 17. Thus, they argue, the fact that Carbon Creek did not remit a payment to a working interest owner within 60 days does not mean that the payment was "late." *Id.* at 17–18. Accordingly, recognition of this argument would require the Court to examine each working interest owner's JIB account to determine whether it had timely remitted its share of the costs associated with the wells in which it owns an interest and, if not, whether Carbon Creek withheld payment in accordance with its rights under the JOAs. *Id.* at 19. Such inquiries, they argue, defeats commonality. *Id.*

Plaintiff retorts by calling Carbon Creek's statement—that the Court must examine each working interest owners' JIB account to determine whether it had timely remitted its share of costs associated with the well in which it owns an interest—as "demonstrably inaccurate" for two reasons. ECF No. 53, at 10–11. First, as the inquiry "improperly plac[es] the burden on the Court." *Id.* at 11. And second, "because those owners have already been ascertained and independently identified by Mr. Porter and Carbon Creek's Rule 30(b)(6) deponent." *Id.* (citing ECF No. 47-1, at 8, and ECF No. 47-2). Accordingly, this contention does not defeat commonality in his view, as any proposed Class member associated with a JIB account has been identified and their damages calculated like every other proposed Class member using a uniform methodology employed by Mr. Porter. *Id.*

19

The Court agrees with Plaintiff. It is unnecessary for JIB netting to foster concern in this matter. As Plaintiff notes, he already identified 33 proposed Class members associated with "JIBNET" accounts, and Carbon Creek's designated deponent confirmed that such accounts are treated like PPAs. *See* ECF Nos. 47-2, 53-5. Therefore, such owners were fully addressed and accounted for by Mr. Porter. Even if such payments are not "late" if not remitted within 60 days, they are nonetheless "late" if they are "late" in the context of a working interest owner with a JIB netting account. In any event, the fact that such owners have already been identified and accounted for does not create cause to deny commonality.

      d.     <u>"Knowledge" Irrelevant for Remitting Statutory Interest on Late Payments</u>.

There is no "knowledge" requirement under the WRPA for late payments lacking statutorily prescribed interest, and thus such contention does not defeat commonality. The WRPA makes no reference to "knowledge" in requiring operators to remit statutory interest on late payments. *See* W.S. §§ 30-5-301–30-5-305. Although the Supreme Court of Wyoming uses the word "knowingly" in *Cities*, they went on to state that the WRPA has "no exceptions . . . providing justification for royalty nonpayment" and that "[e]quity is not a factor for consideration." 838 P.2d at 156.

Carbon Creek, citing to the Wyoming Supreme Court, raises the final contention that commonality is defeated as an operator must "knowingly fail[] to pay" proceeds to be "liable for eighteen percent per annum penalty interest for unpaid royalties pursuant to the [WRPA]." ECF No. 50, at 19–20 (citing *Cities*, 838 P.2d at 156, 156 n.10). Accordingly, they argue, even if Carbon Creek had remitted late payments during a particular month, the

Court would nonetheless be required to analyze each payment to determine whether Carbon Creek "knew" it was late and should have proactively included the statutory penalty interest. *Id.* at 20–21. In addition to citing another court's rejection of using "uniformity" in calculating payments to establish commonality, Carbon Creek raises a host of hypotheticals which would alternatively explain payments lacking the statutory penalty interest. *Id.* (citing *Foster v. Merit Energy Co.*, 282 F.R.D. 541 (W.D. Okla. 2012)).

Plaintiff responds that Carbon Creek's contention—that it is only required to remit statutory interest on payments it "knew" were late—is simply erroneous. ECF No. 53, at 11–13. First, he notes that there is no "knowledge" element within the WRPA. *Id.* at 11. Second, he further contextualizes the Wyoming Supreme Court's ruling in *Cities* as dicta, unrelated to those disputed issues. *Id.* at 12. And third, he argues that the Wyoming Supreme Court clarified that the WRPA does not create a carveout justification for late payment. *Id.* at 12–13.

The Court agrees with Plaintiff. There is no room within the WRPA supporting Carbon Creek's contention. The WRPA makes no reference to a "knowledge" requirement. *See* W.S. §§ 30-5-301 *et seq.* Despite Carbon Creek's suggestion, the Supreme Court of Wyoming's holding in *Cities* does not create such a requirement. 838 P.2d at 156, 156 n.10. *Dicta* or not, the Wyoming Supreme Court stated in *Cities* that "[e]quity is not a factor for consideration because *there are no exceptions in the Act providing justification for royalty nonpayment*." 838 P.2d at 156 (emphasis added). As such, the Court would not be required to make such an inquiry. Separately, as to Carbon Creek's problem with timely issuing and voiding checks, Plaintiff correctly points out that the WRPA accounts for "undeliverable"

21

checks or deceased mineral owners in allowing operators to place undeliverable funds into an interest-bearing escrow account. ECF No. 53, at 12–13 (Citing W.S. § 30-5-302). Thus, Carbon Creek's final contention is unavailing, and Plaintiff has accordingly satisfied the commonality prerequisite under Rule 23(a)(1).

### III.   Typicality

Plaintiff's claims are typical of the proposed Class. The typicality prerequisite under Rule 23(a)(3) requires a plaintiff to demonstrate that his individual claim is "typical of the claims of the class members he seeks to represent." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 949–50 (10th Cir. 2003). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal*, 882 F.3d at 914.

Plaintiff argues typicality is satisfied notwithstanding the differing fact situation of Colton *vis a vis* other member of the proposed Class. ECF No. 47, at 18–19. First, as he and the other members of the proposed Class share an identical claim for relief: "Carbon Creek's breach of its obligations to automatically include eighteen percent (18%) per annum interest on its untimely payments." *Id.* at 18. Second, as both "have been damaged by Carbon Creek's uniform practice of not including the statutorily required interest on untimely payments." *Id.* And third, preempting Carbon Creek's rebuttal that Plaintiff is atypical as an overriding royalty interest owner, that differing ownership interests are immaterial under the WRPA. *Id.* at 19 (citing Wyo. Stat. Ann. § 30-5-301).

As predicted, Carbon Creek argues Plaintiff fails to satisfy typicality, as the latter has not demonstrated that his overriding royalty interest renders him a typical class

member. ECF No. 50, at 22. They base this argument by stating that Plaintiff's interests are "materially different" from other owners, and rationalized with reference to the various distinctions between ownership interests: (1) that Plaintiff is not responsible for paying the costs of production associated with any wells; (2) that Plaintiff and Carbon Creek are not parties to any JOAs and therefore the latter does not maintain a JIB account for the former; and (3) that Carbon Creek does not engage in JIB netting with respect to Plaintiff. *Id.*

In reply, Plaintiff largely takes the same position as before. However, he adds reference to the Tenth Circuit. ECF No. 53, at 13 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)). Additionally, he argues that Carbon Creek fails to explain how Plaintiff's differences from other ownership interests changes the theory for working interest owners—let alone create a conflict between himself and the Class. *Id.*

The Court agrees with Plaintiff. The Tenth Circuit has stated that "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of class representative and class members are based on the same legal or remedial theory." *Adamson*, 855 F.2d at 676; *see also Menocal*, 882 F.3d at 914 (same). Differing ownership interests appear to be immaterial under the WRPA. *See* Wyo. Stat. Ann. § 30-5-301. Thus, Plaintiff's theory *vis a vis* those of other Class members with differing ownership interests are based upon the same theory: that Carbon Creek breached its obligations under the WRPA to automatically include 18% per annum interest on its untimely payments. While different ownership interests involve differing obligations or relationships between the owner and Carbon Creek, all Class members are united in

seeking relief under the same theory. Accordingly, Plaintiff satisfies the typicality requirement under Rule 23(a)(3).

## IV.   Adequate Representation

Plaintiff satisfies Rule 23(a)(4). Adequate representation, as the fourth prerequisite of Rule 23(a), requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating the adequate representation requirement, a court should determine: (1) whether the named plaintiff and their counsel have any conflicts with other class members; and (2) whether the named plaintiff's counsel will vigorously prosecute the action on behalf of the class. *Sherman v. Trinity Teen Sols., Inc.*, 2022 WL 17573837, at *7 (D. Wyo. Oct. 5, 2022) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)). Courts have also recognized that adequate representation is satisfied when "class counsel is qualified, experienced and able to conduct the proposed litigation." *Soseeah v. Sentry Ins.*, 2013 WL 11327129, at *5 (D.N.M. Nov. 4, 2013).

Plaintiff argues that adequate representation is satisfied because he does not have any conflicts of interest with the other members of the proposed Class, and because him and his counsel have been vigorously prosecuting this class action on the proposed Class members' behalf. ECF No. 47, at 19–20. He also points to his counsel's substantial experience litigating natural gas royalty underpayment cases, including class actions. *Id.* at 20. Carbon Creek does not oppose the adequate representation prerequisite.

The Court agrees with Plaintiff. There is no indication of any conflict between other Class members and Plaintiff or named counsel. *Sherman*, 2022 WL 17573837, at *7.

24

Neither is there any indication that Plaintiff's named counsel will not vigorously prosecute this action on behalf of the Class. *Id.* Thus, Plaintiff has satisfactorily demonstrated that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Accordingly, the Court finds Plaintiff has satisfied the adequate representation prerequisite.

## V.   Predominance

The questions of law or fact common to Class members predominate over any questions affecting only individual members. While Rule 23(b)(3)'s predominance requirement is related to Rule 23(a)(2)'s commonality prerequisite, the primary distinction is that the former is somewhat more demanding. *Naylor Farms*, 923 F.3d at 789. Because Rule 23(b)(3) "is designed for situations in which class-action treatment is not as clearly called for," the court has a "duty to take a *close look* at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (emphasis added) (internal quotations omitted).

This prong does not require that a plaintiff show "that all elements of the claim entail questions of fact and law that are common to the class" or "that the answers to those common questions [are] dispositive" of the claim. *Id.* Rather, this inquiry "asks whether the common, aggregation-enabling [] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* "Individual issues" are described as issues where the members of the proposed class will need to present varying evidence from member to member. *Tyson Foods, Inc. v. Bouaphakeo et al.*, 577 U.S. 442, 453 (2016). On the contrary, common, predominating issues are those which can

25

be proven on a class-wide basis using the same or generalized evidence. *Id.* Nonetheless, "predominance may be destroyed if individualized issues will overwhelm those questions common to the class." *Roderick*, 725 F.3d at 1220.

> To satisfy predominance, Plaintiff advances the following questions for the Class:
>
> (1) whether Carbon Creek has made untimely payments to Colton and the members of the proposed Class;
>
> (2) whether Carbon Creek has failed to pay Colton and the members of the proposed Class eighteen percent (18%) interest on those untimely payments; and
>
> (3) whether Carbon Creek's failure to include the requisite statutory interest to Colton and the members of the Class constitutes a violation of the WRPA.

ECF No. 47, at 23. Alleging that Carbon Creek "has for years ignored its obligation to automatically include the requisite statutory interest," Plaintiff argues that deposition testimony and business records produced by Carbon Creek have not only confirmed this, but also that Carbon Creek has treated each member of the Class the same with respect to statutory interest and that it applies its statutory interest policy uniformly to all owners. ECF No. 47, at 24–25. In addition, he cites to Mr. Porter's single methodology—which itself uses various data points—used to determine whether each payment to each proposed Class member each month was made outside the applicable timeframe under the WRPA and the amount of interest owed to each Class member each month, and in concluding the untimely payment statutory interest to be approximately $2,807,092.78. *Id.* at 24 (citing ECF Nos. 47-1, 47-2). Based on this information, Plaintiff argues that each of the three predominating common questions can be answered using common or generalized evidence. *Id.* at 25 (citing *Tyson Foods*, 577 U.S. at 453).

Carbon Creek argues that Plaintiff's request for class certification would not survive a "close look" as the Court would "have to examine each of the individualized issues" previously advanced regarding commonality "with respect to each payment issued to each putative class member." ECF No. 50, at 23 (referring to *Comcast Corp.*, 569 U.S. at 34). As they argue, and "[e]ven though Carbon Creek might not have remitted a payment within 60 days after the last day of the month in which it sold the production," the Court would need to assess:

> (1) whether the timing or amount of the payment was affected by a PPA;
> (2) whether the owner's share of the well's production exceeded the WRPA's $100 threshold;
> (3) whether the owner held a working interest, and if so, whether Carbon Creek engaged in JIB netting under the applicable JOA to recoup or offset costs that the working interest owner had failed to remit; and
> (4) whether Carbon Creek had previously attempted to issue the payment or otherwise reissued a new check due to circumstances outside of its control.

*Id.* Arguing that "consideration of each of these individual issues . . . will be overwhelming," Carbon Creek states that Plaintiff cannot satisfy the predominance requirement. *Id.* at 23–24. Separately, Carbon Creek argues that Plaintiff cannot satisfy the predominance requirement "because his proffered damages model is fatally flawed," and, because Mr. Porter's analysis allegedly "falls far short" of measuring class-wide damages. *Id.* at 24–25 (citing *Comcast Corp.*, 569 U.S. at 35, and *In re Med. Waste Servs. Antitrust Litig.*, 2006 WL 538927, at **6–7 (D. Utah Mar. 3, 2006)).

Plaintiff retorts that predominance is satisfied as "Carbon Creek's obligations and breaches of the WRPA, and its liability to [Plaintiff] and the proposed Class members predominate over any individualized questions." ECF No. 53, at 13. Viewing Carbon

Creek's four issues that the Court would assess as "hypothetical 'individual issues,'" Plaintiff argues that these issues do "fail to rebut [Plaintiff's] showing that the common questions predominate over any individual issues because they do not relate to Carbon Creek's obligations or breaches under the WRPA." *Id.* at 14. Rather, they "solely relate" to the damages amount associated with a handful of Class members, which Plaintiff argues does not suffice to undermine predominance. *Id.* Separately, Plaintiff argues that Carbon Creek's reliance on three other decisions is unpersuasive as those cases may be factually distinguished. *Id.* at 14–15. Lastly, Plaintiff argues that even if Mr. Porter's analysis of Carbon Creek's payment practices is inadmissible, this is functionally irrelevant as predominance can be independently established. *Id.* at 15.

The Court agrees with Plaintiff. Although Carbon Creek raises four potential issues which they believe the Court must assess, these are far more pertinent to the issue of damages rather than identification of Class members—let alone predominance. "[M]aterial differences in damage calculations will only destroy predominance if those individualized issues will overwhelm . . . questions common to the class." *Naylor Farms*, 923 F.3d at 789. Here, differing ownership interests do not overwhelm the predominance of the common questions. While they may create "material differences in damage calculation," such distinctions do not overwhelm the "common question" of whether Carbon Creek owed such individuals an obligation under the WRPA, and whether Carbon Creek breached their obligation to those individuals.[1]

---

[1] Separately, and specifically to how the $100 threshold issue may impact identification of Class members, the Court has rectified this issue in redefining the Class with the framework of Wyo. Stat. Ann. § 30-5-301(b)(i).

Through the lens of whether Carbon Creek had obligations to individual Class members, and in doing so breached those obligations, Plaintiff's predominance showing survives a "close look." *Comcast Corp.*, 569 U.S. at 34. "[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remains individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789 (citing *Tyson Foods, Inc.*, 577 U.S. at 453). Because the WRPA creates "at least one common issue" which predominates, any such individual issues are not overwhelming.

Although Carbon Creek cites three decisions where courts found that a proposed class of oil and gas interest owners did not meet the predominance requirement, such decisions can be readily distinguished. ECF No. 50, at 23–24 (citing *Roderick*, 725 F.3d at 1220, *Riedel v. XTO Energy, Inc.*, 257 F.R.D. 494, 497 (E.D. Ark. 2009), and *Foster*, 282 F.R.D. at 544). All three cases involved a class of royalty owners alleging that the defendant operator had failed to properly pay royalties consistent with their obligations under their oil and gas *leases*. *Roderick*, 725 F.3d at 1220; *Riedel*, 257 F.R.D. at 497; *Foster*, 282 F.R.D. at 544. Here, Carbon Creek's obligations arise from the WRPA, rather than individual leases. Unlike the leases in those cases, the WRPA does not balkanize Class members' claims—it unifies them.

Finally, although Carbon Creek seeks to strike Mr. Porter's analysis of their payment practices as inadmissible, such an issue would not have bearing on the Court's conclusion to certify the proposed Class. As Plaintiff points out, "Carbon Creek's discovery responses, business records, and deposition testimony, *standing alone*, establish the common questions and common answers which makes this case ripe for certification

of a Rule 23(b)(3) class." ECF No. 53, at 15. The Court agrees. Even excluding Mr. Porter's analysis, Plaintiff nonetheless demonstrates that common issues predominate over individual issues. Accordingly, the Court determines Plaintiff has satisfied the predominance requirement, notwithstanding Carbon Creek's qualms.

## VI.   Superiority

Plaintiff has demonstrated that a Rule 23(b)(3) "class action is superior to other available methods for fairly and efficiently adjudicating the controversy" in this case. Fed. R. Civ. P. 23(b)(3). The superiority requirement under Rule 23(b)(3) may be satisfied if class adjudication will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). "The policy at the very core of the class action mechanism is to overcome the problem that smaller recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617. As mentioned above, Rule 23(b)(3) lists four non-exclusive matters pertinent to this finding. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Plaintiff argues that superiority is satisfied, as a class action is superior to other available methods for fairly and efficiently adjudicating the underlying controversy. ECF No. 47, at 25–27. Using the four factors listed in Rule 23(b)(3)(A) through (D), Plaintiff argues each demonstrate that the superiority prong is satisfied. *Id.* at 26–27.

While Carbon Creek argues that "[Plaintiff] fails to satisfy . . . the predominance and superiority requirements in Rule 23(b)(3)," the only argument they proffer on

superiority are found in a footnote. ECF No. 50, at 12, 24 n.6. There, Carbon Creek argues that "[b]ecause of the need to consider individualized issues, [Plaintiff] also cannot show that adjudication of a certified class claim will be manageable under Rule 23(b)(3)(D)." *Id.* at 24 n.6 (internal citation omitted).

The Court agrees with Plaintiff. Analyzing each of the four factors, Plaintiff satisfactorily demonstrates that the superiority prong is satisfied. To the extent that Carbon Creek expresses opposition, it is better construed as relating to the fourth factor. Nonetheless, relating to the first factor, Plaintiff demonstrates that this weighs in his favor. Fed. R. Civ. P. 23(b)(3)(A). There is no evidence that any of the Class members are interested in individually controlling the prosecution of separate lawsuits, beyond the one instance identified in which Carbon Creek paid interest to an owner in conjunction with an untimely payment claim. *See* ECF No. 47-4. Given the figures Plaintiff provides in support, the Court agrees that it would be uneconomic for Class members to individually litigate against Carbon Creek. *See* ECF No. 47, at 27 (citing ECF No. 47-1).

Next, with no identified pending, separate litigation concerning this controversy by any of the proposed Class members, the second factor weighs in favor of granting class certification. Fed. R. Civ. P. 23(b)(3)(B); *see Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 300 (D. Utah 2021). The third factor also weighs in favor of certifying the class, as all natural gas production at issue occurred in this district, Carbon Creek conducts significant business here, and the Class members' claims are governed by Wyoming law. Fed. R. Civ. P. 23(b)(3)(C).

The fourth factor similarly weighs toward class certification. Fed. R. Civ. P. 23(b)(3)(D). As Plaintiff has consistently reiterated, "Carbon Creek owes the same statutory obligations to each of the Class members, and the primary liability issue is the same for all of the Class members." *See, e.g.*, ECF No. 47, at 27. As for Carbon Creek's argument, already having addressed the existence and concerns of alleged "individualized issues," the Court does not agree that such issues will make this class claim unmanageable. ECF No. 50, at 24 n.6. Beyond the $100 threshold, these issues are better suited to the issue of damages and would not hijack future proceedings. On the contrary, denying class certification would risk any "economies of time, effort, and expense" or the promotion of "uniformity of decision as to persons similarly situated," all in the name of issues that may be addressed later. *Amchem Prods.*, 521 U.S. at 615. Accordingly, based on these findings, the Court concludes that Plaintiff has satisfied the superiority requirement and ultimately satisfies all prerequisites and requirements necessary to certify a Rule 23(b)(3) class.

## CONCLUSION

The Court finds that Plaintiff Gregg B. Colton has satisfied each Rule 23(a) prerequisite (numerosity, commonality, typicality, and adequate representation) and the additional Rule 23(b)(3) requirements (predominance and superiority). However, Plaintiff's proposed Class definition must be amended to maintain commonality to include the $100 threshold requirement and twelve-month period under Wyo. Stat. Ann. § 30-5-301(b)(i). The admissibility of Mr. Porter's analyses is left for a later date, with the Court recognizing that the parties have provided filings pertinent to this issue.

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that *Plaintiff's Motion for Class Certification* (ECF No. 46) is **GRANTED**, albeit with the Court's revisions to Class definition, as set forth above. Plaintiff's amended Class is certified under Fed. R. Civ. P. 23(b)(3) for the alleged violations of the WRPA against Defendant Carbon Creek Energy, LLC.

**IT IS FURTHER ORDERED** that Plaintiff Gregg B. Colton is appointed as the Class representative.

**IT IS FURTHER ORDERED** that George A. Barton is appointed lead Class counsel.

**IT IS FINALLY ORDERED** that the Court will enter a separate *Order* defining and certifying the Class, designating Class representatives and Class counsel, and addressing notice to the Class. Please see the attached *Form of Order* (Attachment A) Counsel shall meet and confer, complete the dates left open in the *Form*, and email the final proposed *Form of Order* to Chambers email address on or before Tuesday, September 3, 2024. Any revisions to the *Form of Order*, beyond inserting proposed dates, shall be clearly visible in "red-line" or "track change" mode.

Dated this _15th_ day of August, 2024.

Alan B. Johnson
United States District Judge

33